KLEES, Judge.
This appeal arises from a summary judgment dismissing part of defendant-appellant’s, deLaureal Engineers, Inc., (deLau-real), third-party demand against defendant-appellee, Continental Casualty Company (CNA), insurer of Modjeski and Masters (M and M). The issue presented by deLau-real, is whether the trial judge’s granting of the summary judgment was erroneous and contrary to law. We conclude that summary judgment should not have been granted and reverse and remand for the following reasons.
A suit for damages was originally brought against deLaureal Engineers, Inc., Modjeski and Masters, and Continental Casualty Company, among others, by the plaintiff, Jan R. Carter, for injuries sustained in a cross-over head-on collision on the Greater New Orleans Mississippi River Bridge. deLaureal and M & M are the consulting engineers for the Mississippi River Bridge Authority. CNA is the errors and omissions liability insurer for M & M. The original petition, alleged that deLaureal and M and M were negligent in their failure to design and/or recommend a median to prevent cross-over accidents.
deLaureal filed a third-party claim against M & M seeking indemnity and contribution. The third-party demand was supplemented and amended in November 1982 to include CNA as the insurer of M & M. An amended third-party petition, setting forth in detail the claims against M and M, was filed on January 12, 1984.. In the third-party demand, deLaureal specifically alleged “that CNA was the profes *998 sional liability insurer of Modjeski and Masters pursuant to a policy separately issued for 1971, 1972, 1973, 1974, 1975, 1976 and 1977. Accordingly, the limits of coverage afforded under each of these policies are available to satisfy any judgment rendered against Modjeski and Masters.”
CNA filed a motion for summary judgment on the amended third-party petition of deLaureal in February 1984. The trial court granted the motion for summary judgment in favor of CNA, holding that the only policy applicable in this litigation is the policy issued in 1978 by CNA to Modje-ski and Masters.
A summary judgment may be granted by a court only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Barnes v. Combined Insurance Co. of America, 409 So.2d 700 (La.App.4th Cir.1982); Thornhill v. Black, Sivalls, and Bryson, Inc., 394 So.2d 1189 (La.1981); LSA-C.C.P. article 966.
In the present case, the record shows that in granting the summary judgment, the trial court considered the pleadings of both parties, and a copy of the 1978 insurance policy attached to CNA’s memorandum in support of the motion for summary judgment. deLaureal argues that the trial court erred in considering the 1978 insurance policy and renewal certificates. The crux of deLaureals’s argument is that the policy and renewal certificates are not sufficient exhibits, as the policy and certificates were not certified. However, an insurance policy need not be certified to be used as an exhibit designed to support a motion for summary judgment. Barnes v. Combined Insurance Co. of America, 409 So.2d at 703, citing Lola v. Schoen Life Insurance Co., 342 So.2d 1283 (La.App,4th Cir.1977). We conclude that the trial judge did not abuse his discretion in considering the text of the 1978 insurance policy.
Before a summary judgment may be granted, the mover must show that there are no genuine issues of material fact. Barnes v. Combined Insurance Co. of America, supra at 702. In the case at bar, we find that the mover, CNA, did not meet its burden. The amended petition in question alleges that the policies issued by CNA to M & M for the years 1971 through 1978 are applicable to cover any damages awarded against M and M in the present litigation. CNA has countered these allegations with the argument that the insurance policy provides for coverage solely under the 1978 policy.
CNA’s argument is based upon its interpretation of the “claims made” provisions of the insurance policy. Under the policy, the appropriate policy period for coverage is determined by the date a claim is made.[1] A claim is defined in “Section III, Part A, Insuring Agreements” as a “demand for money or services, or the filing of suit or institution of arbitration proceeding naming the Insured and alleging an error, omission or negligent act.” The insurance policy further provides that claims arising from a single error, omission or negligent act, or out of related errors, omissions or negligent acts shall be treated as a single claim. When there are such multiple claims, the applicable liability coverage is determined by the policy in effect at the time the first claim is made.[2]
*999 CNA contends that since deLaureal’s third party suit is simply a demand for indemnity and contribution based upon the original plaintiffs demand, then it is related to the plaintiffs claim. CNA argues that, as the plaintiffs petition was filed in 1978, then only the 1978 policy is applicable.
However, deLaureal argues that the “claims made” provisions are vague and ambiguous in that there is no definition of “related errors, omissions or negligent acts” in the insurance policy. deLaureal contends that as a result of this ambiguous language, CNA has complete discretion to determine which claims are related. de-Laureal raises the possibility that the errors, omissions and negligent acts that the original plaintiff has raised in her petition may be related to errors, omissions and/or negligent acts which were raised by claims made against M & M, and CNA in the years from 1971-1977.
When there is “any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to a provision which limits liability under the policy, the law requires that the contract be interpreted liberally in favor of coverage.” Credeur v. Luke, 368 So.2d 1030, 1032 (La.1979), citing Craft v. Trahan, 351 So.2d 277 (La.App.3rd Cir.,1977). In the present case, construing the policy in question to allow coverage under the policies issued by CNA to Modjeski and Masters from 1971 to 1977 would require a finding that claims made in the years 1971-1977 involve errors, omissions and/or negligent acts which are related to the errors, omissions and negligent acts alleged in the plaintiffs, Jan Carter, petition. There are not sufficient facts regarding claims made from 1971 to 1977 before this court to make such a determination. Further, the evidence in the record is not sufficient for this court to determine, how “related errors, omissions or negligent acts” should be interpreted.
Accordingly, the summary judgment in favor of CNA is hereby reversed, and this matter is remanded to the District Court for trial.
REVERSED AND REMANDED.

. "Part A. Insuring Agreements
Section IV Place and Time of Error, Omission or Negligent Act.
b. Time
The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the Declarations (the effective date of the first policy issued and continuously reviewed by the Company) provided that claims therefor are first made against the insured during this policy period, and reported in writing to the Company during this policy period or within sixty (60) days after expiration of this policy period (emphasis added).”

. "Part A. Insuring Agreements.
Section III. Definitions
b. Single Claim
Two or more claims arising out of a single error, omission or negligent act, or out of relat *999 ed errors, omissions or negligent acts shall be treated as a single claim.”
“Part B. Computation of amounts payable by the Company and the Insured.
Section I. Limit of Liability — Per Claim
b. Claims arising out of a single error, omission or negligent act, or claims arising out of related errors, omissions or negligent acts shall be deemed single claims.
c. Regardless of the time of the error, omission or negligent act, the deductible amount and scope of coverage (other than the limit of liability — per claim and aggregate) applicable to claims made during this policy period are as provided in this policy.
Section II. Limit of Liability — Aggregate
If claims arising from a single error, omission or negligent act, or from related errors, omissions, or negligent acts are made in different annual policy periods, the applicable aggregate limit of liability shall be that in effect at the time the first such claim is made.”